George E. CHASE, Appellant,

v.

STATE of Oklahoma ex rel. DEPART-
MENT OF PUBLIC SAFETY,
Appellee.

No. 68517.

Supreme Court of Oklahoma.

July 24, 1990.

As Corrected Aug. 20, 1990.

Stephen G. Fabian, Jr., Cathy M. Chris-
tensen, Fabian & Associates, Edmond, for
appellant.

Earl L. Reeves, Jr., Robert T. Goolsby,
Oklahoma City, for appellee.

OPALA, Vice Chief Justice.

The dispositive issue on certiorari is
whether the district court erred by failing
to vacate a driver's license revocation order
because it was not founded on administra-
tive documentation that meets the stan-
dards mandated by the governing statute.
We answer in the affirmative.

The appellant, George E. Chase [driver
or licensee], was arrested following a one-
car accident. He then consented to take a
breath test for alcohol concentration. The
Commissioner of the Department of Public
Safety [Department or DPS] revoked his
driver's license because, *inter alia*, the test

result exceeded the minimum value (0.10) for intoxication prescribed by the terms of 47 O.S.Supp.1986 § 754(3).[1] Following a hearing the Commissioner sustained the revocation which was to be effective January 6, 1987.[2]

On appeal, the district court modified the Department's order,[3] permitting the licensee to drive to work and to other work-related locations. The Court of Appeals reversed the nisi prius order, holding that the Department's revocation order must be vacated because of perceived fatal flaws[4] which facially taint the proceedings before the Commissioner and render them "void." Upon the Department's petition, we now grant certiorari to provide guidance on an important, first-impression question of public law.

■ Two *statutory prerequisites* for DPS revocation of the license here in dispute are: 1) a written report that the driver's breath test showed an alcohol concentration of at least 0.10 *and* 2) the enforcement officer's *sworn report* "that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads ... while under the influence of alcohol...."[5] In addition to these legislative standards for essential DPS paperwork, the Court of Appeals required, as a precondition to an effective revocation, that the first of these documents—the written

1. This statute requires the Commissioner to revoke the driver's license of an arrested person based on 1) *a written report showing the driver had an alcohol concentration of 0.10 or more* and 2) *the arresting officer's "sworn report."* The pertinent terms of 47 O.S.Supp.1986 § 754(3) are:

"3. Upon receipt of a *written blood or breath test report* reflecting that the arrested person had an *alcohol concentration of ten-hundredths (0.10) or more, accompanied by a sworn report* from a law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle ... while under the influence of alcohol, the Commissioner of Public Safety *shall revoke* the license to drive of the arrested person and any nonresident operating privilege for a period of ninety (90) days. * * *" (Emphasis added).

2. Adjudicative hearings in a driver's license revocation proceeding before the Public Safety Department are not governed by the Administrative Procedures Act. See 75 O.S.1981 § 325, which provides:

"The provisions of [the Administrative Procedures Act] Section 9 to Section 16, inclusive, *shall not apply* to hearings conducted by the Personnel Board under 74 O.S.1961, § 833, or *the Commissioner of Public Safety* under 47 O.S.1961, § 2–115." (Emphasis added.)

The quoted statute in effect when the revocation proceeding took place was repealed and replaced by 75 O.S.Supp.1987 § 250.4(B)(11), effective July 20, 1987, whose terms are:

"B. As specified, the following agencies or classes of agency activities *are not required to comply with the provisions of Article II of the Administrative Procedures Act:*

" * * *

"11. *The Commissioner of Public Safety* only with respect to hearings conducted pursuant to the provisions of Section 2–115 of Title 47 of the Oklahoma Statutes;

" * * *" (Emphasis added.)

3. The licensee's right to appeal from the revocation order is governed by the terms of 47 O.S. 1981 § 6–211, which provide in pertinent part:

"(a) Any person ... whose license has been ... revoked by the Department ... *shall have the right to file a petition in the district court* wherein the petitioner resides, and such district court is hereby vested with original jurisdiction to hear said petition.

" * * *

"(i) *An appeal may be taken by the licensee* or by the Department of Public Safety *from the order or judgment of the district court to the Supreme Court of the State of Oklahoma.* * * *" (Emphasis added.)

The quoted provision has been amended. The pertinent provisions of 47 O.S.Supp.1988 § 6–211, in effect since November 1, 1988, are:

"(a) Any person ... whose license has been ... revoked by the Department ... shall have the right to file a petition in the district court as hereinafter provided. Such district court is hereby vested with original jurisdiction to hear said petition, *except that in case of an appeal from a driver's license revocation* under the implied consent laws as provided in Sections 753 and 754 of this title, *the court* is hereby vested with appellate jurisdiction and *shall hear said petition de novo.*

" * * * [The terms of former subsection (i) are now found in subsection (n).]" (Emphasis added.)

4. The Court of Appeals held that the proceedings before DPS are fatally flawed for lack of 1) the arresting officer's sworn report *and* 2) a breath test report certifying, among other things, that the tester currently qualifies by law to perform the analysis.

5. See 47 O.S.Supp.1986 § 754(3), *supra* note 1.

alcohol analysis—include, *inter alia*, a certification by the tester that he (or she) is qualified to and did properly administer the test to the affected licensee. Because § 754(3)[6] *does not* provide for the inclusion of such statement by the sobriety tester, its absence cannot constitute a flaw in the Department's paperwork.

██ DPS concedes that the *sworn report* of an enforcement officer, which § 754(3) expressly mandates, is absent from the DPS paperwork and from the record in this case. Although there is an exhibit before us entitled "Officer's Affidavit and Notice of Revocation,"[7] the name of the person designated in this document as the affiant *differs* from that of the individual whose signature appears on it.[8] This *patent deficiency* in the statutorily required DPS material does indeed make the Department's revocation order *vulnerable to invalidation, on timely appeal, for failure to meet the minimum legislatively prescribed standards for the DPS paperwork on which its administrative action must be rested.*[9]

██ We therefore hold that when, on appeal to the district court, the trial judge finds a DPS revocation order was issued on administrative documentation that fails to meet the minimum standards mandated by the applicable statute, the order should be set aside as fatally flawed.[10]

CERTIORARI IS GRANTED; THE COURT OF APPEALS' OPINION IS VACATED; THE DISTRICT COURT'S ORDER MODIFYING THE DRIVER'S LICENSE REVOCATION IS REVERSED;

**6.** For the pertinent terms of 47 O.S.Supp.1986 § 754(3) see *supra* note 1.

**7.** The document entitled "Officer's Affidavit and Notice of Revocation" came to be included in the appellate record only after the Court of Appeals requested the parties to produce what was perceived to be exhibits missing from the record. Although the omitted document was transmitted to that court in a rather *irregular* manner, neither party has objected to its tardy and informal inclusion for consideration on appeal. We hence treat the added paperwork as though it had been incorporated into the record by the parties' stipulation.

**8.** The district court's hearing transcript confirms that the arresting officer did not sign the report. The signature that does appear on it belongs to the officer who administered the breath test (not the arresting officer).

**9.** Since we hold today that the defect present here—one that is apparent on the face of the administrative proceedings—vitiates the revocation, we need not pass on the other assignments of error the licensee pressed in his appeal.

**10.** We adopt as legally correct the Court of Appeals' postdecisional order by which the *costs* of this appeal came to be taxed against DPS. See 12 O.S.1981 §§ 66 and 978, *infra*.

The terms of 12 O.S.1981 § 66 provide in pertinent:

"Whenever an action is filed in any of the courts in the State of Oklahoma by the State of Oklahoma, or by direction of any department of the State of Oklahoma, no bond, including cost, replevin, attachment, garnishment, redelivery, injunction bonds, appeal bonds or other obligations of security shall be required from the State of Oklahoma or from any party acting under the direction aforesaid, either to prosecute said suit, answer or appeal same. *In case of an adverse decision, such costs as by law are taxable against the State of Oklahoma,* or against the party acting by its direction, as aforesaid, *shall be paid out of the contingent fund of the department under whose direction the proceedings were instituted.*" (Emphasis added.)

The terms of 12 O.S.1981 § 978 provide:

"*When a* judgment or *final order is reversed, the plaintiff in error shall recover his costs,* including the costs of the transcript of the proceedings, or case-made, filed with the petition in error; and when reversed in part and affirmed in part, costs shall be equally divided between the parties." (Emphasis added.)

Because today's holding invalidates—for a *fatal deficiency apparent on the face of the revocation proceeding*—an administrative action effective from January 6, 1987, we express no opinion as to whether a driver who succeeds under like circumstances in vacating a DPS revocation order may recover *attorney's fees* pursuant to the terms of 12 O.S.Supp.1987 § 941(B), whose provisions were *not* in effect at the critical time herein. That subsection provides:

"B. *The respondent in any proceeding* brought before any state administrative tribunal by any state agency, board, commission, department, authority or bureau authorized to make rules or formulate orders *shall be entitled to recover against such state entity court costs, witness fees and reasonable attorney fees if* the tribunal or a court of proper jurisdiction determines that the proceeding was brought *without reasonable basis or is frivolous*; * * * *This subsection shall apply to any proceeding before any state administrative tribunal commenced on or after November 1, 1987.*" (Emphasis added.)

CAUSE REMANDED TO THE DISTRICT COURT WITH DIRECTIONS TO DISMISS.

HARGRAVE, C.J., and LAVENDER, SIMMS, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

HODGES, J., dissents.